### MacCOLL v. KNOWLES LOOM WORKS.

(Circuit Court of Appeals, First Circuit. May 31, 1899.)

1. PATENTS—CONSTRUCTION OF CLAIMS.

    The omission of the patentee to point out or refer in his specification or claims to the special feature which he subsequently maintains is the most important part of his invention is very significant, and should be carefully scrutinized.

2. SAME—LAPPET-LOOMS.

    The MacColl patent, No. 570,259, for improvements in lappet-looms, construed, and *held* not infringed as to claim 1, which covers a pattern-chain, which by its peculiar construction governs the form and position of the lappet-pattern.

Appeal from Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by James R. MacColl against the Knowles Loom Works for alleged infringement of a patent for improvements in lappet-looms. The circuit court found that the defendant's loom was not an infringement of the patent, and accordingly dismissed the bill. 87 Fed. 727. From this decree the complainant has appealed.

James E. Maynadier, for appellant.

Frederick P. Fish and William K. Richardson (John C. Dewey and Frederick L. Emery, with them on the brief), for appellee.

Before COLT, Circuit Judge, and WEBB and ALDRICH, District Judges.

COLT, Circuit Judge. This appeal relates to a patent issued to James R. MacColl for improvements in lappet-looms, dated October 27, 1896, and numbered 570,259. The court below held that the defendant did not infringe, and dismissed the bill. The controversy mainly turns upon the proper construction of the first claim of the patent. This claim is to be construed in the light of the specification and drawings of the patent, and of the prior art; and, so construed, its meaning seems to us clear and intelligible. The claim reads:

"(1) In a pattern-chain for lappet-looms, the combination of the bar-links, with adjustable pattern screws or pins, the varying positions of which relatively to the bar-links govern the form and position of the lappet-pattern, substantially as described."

The specification says:

"Heretofore it has not been deemed practicable to apply the pattern screws or pins which serve to govern the position and form of the lappet-pattern to a loosely driven pattern-chain, owing to the apparent looseness and unreliability of the many-jointed construction for such delicate and accurate adjustment as is in the nature of the case required; but the pattern screws or pins have only been applied to the peripheries or sides of rigid disks or wheels, which are adapted by means of closely-fitting shafts and bearings for revolution in a true circle or in a fixed plane, without liability of looseness or change therein. In this rigid form of construction a change and substitution of larger or smaller wheels for every change in the number of picks in the lappet-pattern is required, with resulting expense and trouble in keeping account of the necessarily great number of separate wheels; the rigid wheels thus required for forming lappet-patterns of ordinary dimensions being quite large and cumbersome. I have, however, proved that the most perfect and delicate lappet-patterns may be formed in practice by means of an adjustable pattern-chain, with the resulting great advantage that an increase or decrease in the size of the lappet-pattern may be readily produced by the simple insertion or removal of the bar-links of which the chain is composed, thus dispensing with the great number of rigid wheels or disks heretofore required to form an assortment of lappet-patterns, changes therein being almost constantly required to suit the demands of the trade for new styles of lappet ornamentation. My improvement in lappet-looms is adapted for application to ordinary cotton and woolen looms already in use, whereby the principle of lappet-weaving may be successfully employed in such looms; and it consists in the employment of a pattern-chain provided with adjustable pattern screws or pins to govern the form and position of the lappet-pattern, and in the improved construction and arrangement of the lappet mechanism, as hereinafter set forth."

This statement in the patent sets out clearly the defect in former pattern-chains, the remedy proposed, and the means by which it is accomplished: (1) Owing to the looseness and unreliability of the many-jointed construction, it had not theretofore been deemed practicable to apply the pattern screws or pins which serve to govern the position and form of the lappet-pattern to a loosely-driven pattern-chain; (2) such pattern screws or pins have only been applied to the peripheries or sides of rigid disks or wheels; (3) in this rigid form of construction a substitution of larger or smaller wheels for every change in the number of picks is necessary, with resulting expense and trouble; (4) by means of an adjustable pattern-chain an increase or decrease in the size of the lappet-pattern may be readily produced by the simple insertion or removal of the bar-links of which the chain is composed; (5) the improvement (so far as relates to claim 1) consists in the employment of a pattern-chain provided with adjustable pattern screws or pins to govern the form and position of the lappet-pattern.

Lappet-looms have been known in the art for many years. They are simply the ordinary loom for weaving cloth, with lappet attachments for the purpose of attaching to the face of the cloth an ornamental thread, which is called a "whip-thread" or "lappet-thread." This thread is carried by a needle, and is woven into the cloth in some pattern, which is called the "lappet-pattern." The mechanism consists of a needle-bar, which is held on the lay of the ordinary weaving loom, and moves transversely across the warp threads, so that each needle lays a whip-thread on the surface of the cloth as it is being woven. The needle then moves vertically through the warp

threads, so that the whip-thread may be fastened in place by the weft-thread thrown across by the shuttle. The successive longitudinal movements of the needle-bar which form the lappet-pattern are controlled by a pattern surface connected with the needle-bar. This pattern surface for moving the needle-bar may be carried either on a wheel called a "pattern-wheel," or on the links of a chain wrapped around a wheel called a "pattern-chain." The equivalency of pattern-chains and pattern-wheels as pattern surfaces was well known prior to MacColl's invention. We think the prior art on this point is fairly stated by Mr. Appleton, defendant's expert in the Crompton Case (95 Fed. 987):

"For many years prior to MacColl, pattern surfaces in the form of wheels and in the form of chains were well-known equivalents of each other for governing the form and position of the lappet-patterns produced by lappet-looms, wherein they both performed that function in substantially the same way. This equivalency is clearly shown in the two British patents to Smith [1842, 1854], one of which employs a wheel and the other a chain for fulfilling the same function in a lappet-loom. It is further shown in the United States patent to Newton [1873], above referred to, wherein a lappet pattern-wheel and a lappet pattern-chain are mentioned specifically as alternatives for each other."

In speaking of the swells or projection on the lappet-wheel, the Newton patent (No. 5,365) says:

"The swells may also be arranged on a chain instead of on the rim of a wheel, thereby giving greater scope to the principle of varying the pattern by using stitches of different length."

And, further:

"These swells are arranged with slots and fastened with screws, so as to be adjustable as to height, thereby enabling me to make stitches of unequal length."

In his original application, MacColl sought to have allowed a broad claim for the combination (in a lappet-loom) with the lay and needle-bars and frames of a pattern-chain, and means for operating the same to cause the required movement of the needle-bars. This claim was rejected on reference to the Spitzli and other patents, whereupon the specification was amended, and the invention declared to consist "in the employment of a pattern-chain, provided with adjustable pattern screws or pins to govern the form and position of the lappet-loom"; and the claim was limited to the "combination of the bar-links, with adjustable pattern screws or pins, the varying positions of which relatively to the bar-links govern the form and position of the lappet-pattern."

The Spitzli patent, dated November 21, 1865, declares:

"This invention consists in a pattern-wheel composed of a series of adjustable pins inserted into the periphery of a disk," etc. "From the circumference of said pattern-wheel project a series of radiating pins, g, of an equal length, and arranged so that their length from the circumference of the wheel can be regulated at pleasure. By imparting to the pattern-wheel an intermittent rotary motion, the pins, g, are successively brought opposite the cam, m, and the position of the needle-bar changes according to the different lengths of said pins."

The prior art, as well as the proceedings in the patent office, limits the first claim of the MacColl patent to a pattern-chain having "bar-

links with adjustable pattern screws or pins," as described in the specification. In this pattern-chain each link carries split lugs, in which pattern-screws are clamped by a binding screw, which can be loosened so as to adjust the pattern-screws towards or from the part to be moved; this adjustability being lengthwise of the links of the chain. The specification says:

"The bar-links, $f^1$, $f^1$, are provided with the screw-threaded split lugs, $h^1$, $h^2$, in which are inserted the pattern-screws, $i^2$, $i^3$, the said screws being clamped in their proper position by means of the tightening screws, $j^1$, which operate to draw the sides of the split lugs together against the sides of the screws; and the pattern to be formed in the woven web by the action of the needles will be governed by the relative positions of the forward ends of the pattern-screws of the chain, the said forward ends coming successively into engagement with the cams, v and $v^1$, which are connected by means of the rods, u, $u^1$, with the needle frames, b, $b^1$, as before described."

The defendant's chain is wrapped around a sprocket-wheel in the usual manner. It has screw-holes in the links, into which pins with heads of different size are screwed. If it is desired to change the form and position of the lappet-pattern at any point, the pin cannot be adjusted relative to the bar-link, but the pin has to be removed, and a new pin, having a head of different length, has to be inserted. The operative length of the pin cannot be changed without removal, by turning a screw upon the link, which is the feature of the Mac-Coll device. The pins are not set parallel to the bar-links, as in MacColl, but vertically, as in the old Jaggi chain; nor are they adjustable longitudinally. They are not, in other words, the adjustable pins described in the MacColl patent. The pins in the drawing of the MacColl patent show an alternation of relatively long and short pins. From this it is contended that the pattern-chain produces a solid pattern, as distinguished from a line pattern. It is upon this construction of the patent and claim that the complainant largely relies. This point is elaborated with much force and ingenuity by complainant's expert and counsel. But the trouble with this construction is that nothing is said in the specification or claims about solid patterns or line patterns, or relatively long and short projections or pins. The first claim is for adjustable pins, not for relatively long and short pins; and it covers such adjustable pins, whether or not they happen to be relatively long and short. For the first time in the lappet-loom art this distinction between solid and line patterns seems to have been taken, and in face of no intimation of any such distinction to be found in the patent. Mr. Metcalf, complainant's expert, says:

"My present recollection of the matter, however, is that the difference between a line pattern and a solid pattern is not described explicitly in any of the patents which I have discussed in connection with this suit. * * * Neither of the MacColl patents describes the difference or distinction between a line pattern and a solid pattern."

The whole thing seems to be a mere matter of adjustment. As Mr. Livermore, the defendant's expert, well observes:

"In the loom of the Spitzli patent or of the French patent, the same as in the loom of the MacColl patent and defendant's loom, each pin or element of the pattern controls the position of the needle-bar at one end of the stitch, and the

next pin at the other end; and it is therefore merely a matter of adjustment as to whether the pins shall be alternately high and low, producing the solid pattern, or progressively increased in height or diminished in height for several steps so as to produce a line pattern at any given point."

The construction contended for by complainant is at variance with the plain and intelligible meaning of the specification and claim of the patent, and we do not think the court would be justified in adopting such a view, on any sound or rational theory of interpretation. Line patterns and solid patterns were old in lappet-looms. A construction of a patent like MacColl's for adjustable pins on the links of a pattern-chain, which results in holding one adjustment of the pins to make one old form of pattern, to infringe, and another adjustment of the pins, to make another old form of pattern, not to infringe, would be placing an unjust limitation on the claim, in violation of its plain language and intent.

We attach no special significance to the words, "govern the form and position of the lappet-pattern," in the claim. This expression is equally applicable to all forms of lappet screws or pins, and can have no special reference to either solid or line patterns. MacColl, in his specification, in describing what was old, uses the same descriptive words:

"Heretofore it has not been deemed practicable to apply the pattern screws or pins which serve to govern the position and form of the lappet-pattern to a loosely-driven pattern-chain, * * * but the pattern screws or pins have only been applied to the peripheries or sides of rigid disks or wheels."

He then points out the advantages of his own construction. It is obvious that the words "form and position," in his first claim, are descriptive of the same function which he attributes to prior pattern screws or pins. It is difficult to conceive how it is possible to construe these words, so far as anything appears in the patent or in the prior art, as having reference solely to solid patterns. In the construction of a patent, the omission of the patentee to point out or refer in his specification or claims to the special feature which he subsequently maintains is the most important part of his invention is very significant, and should be carefully scrutinized.

"If this feature be an advantage, as now claimed, it is strange that no allusion is made to it in the specification." Fastener Co. v. Kraetzer, 150 U. S. 111, 116, 14 Sup. Ct. 48.

Again, in Edge-Setter Co. v. Keith, 139 U. S. 530, 539, 11 Sup. Ct. 621, the court said:

"If any separate function had been performed by this combination, it is somewhat singular that the patentee did not call attention to it in his original application, or until after the main feature of his patent was shown to have been anticipated."

In McClain v. Ortmayer, 141 U. S. 419, 424, 12 Sup. Ct. 76, the court held:

"The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement or combination, which he claims as his invention or discovery,' is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them. The claim is the measure of his right to relief."

To the same effect, see Deering v. Harvester Works, 155 U. S. 286, 296, 15 Sup. Ct. 118; White v. Dunbar, 119 U. S. 47, 52, 7 Sup. Ct. 72; Burns v. Meyer, 100 U. S. 671, 672.

The decree of the circuit court is affirmed, with costs to the appellee.