## MacCOLL v. CROMPTON LOOM WORKS.

(Circuit Court of Appeals, First Circuit. May 31, 1899.)

No. 259.

PATENTS—LAPPET-LOOMS.

> The MacColl patents, Nos. 570,259 and 570,260, both for improvements in lappet-looms, construed, and *held* not infringed, the former as to claims 1 and 6, and the latter as to claims 1 and 2.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by James R. MacColl against the Crompton Loom Works for infringement of letters patent Nos. 570,259 and 570,260, both issued October 27, 1896, to the complainant, for improvements in lappet looms. Claims 1 and 6 of the former patent and 1 and 2 of the latter were in issue. The circuit court found that there was no infringement of any of these claims, and accordingly dismissed the bill (87 Fed. 731), and from this decree the complainant has appealed.

James E. Maynadier, for appellant.

Frederick P. Fish and William K. Richardson (John C. Dewey and Frederick L. Emery, on the brief), for appellee.

Before COLT, Circuit Judge, and WEBB and ALDRICH, District Judges.

COLT, Circuit Judge. This appeal was heard at the same time as the suit by this complainant against the Knowles Loom Works. 95 Fed. 982. The Knowles Case limited the charge of infringement to the first claim of MacColl patent, No. 570,259. This suit is brought for infringement of the first and sixth claims of that patent, and claims 1 and 2 of the second MacColl patent, No. 570,260. Both patents were issued the same day, October 27, 1896. The opinion handed down this day in the Knowles Case, construing the first claim of patent No. 570,259, and holding that the Knowles pattern chain did not infringe that claim, also applies to this case. The defendant's chain is composed of links of different sizes, which govern the pattern. It has no adjustable pins. The action of the pattern projections is radial, and not longitudinal, as in the MacColl chain. This chain is more remote from the specific mechanism covered by the first claim of the MacColl patent than the Knowles device. In view of our opinion in the Knowles Case, further consideration of this claim is unnecessary.

Claim 6 of the first MacColl patent relates to a combination of mechanism by means of which one of the needle bars remains inoperative at any desired point in the pattern, whereby discontinuous patterns, such as spots in the cloth, may be made. The lappet pat-

tern is made by the succession of transverse stitches. To interrupt the pattern, the rising and falling of the needle bar must be stopped. When this is done the needle simply carries along a thread above or below the face of the cloth according to the position of the needle bar, until the up and down motion is resumed. The claim is as follows:

"(6) In a lappet loom, the combination of a needle bar and pattern chain mechanism with intermediate engaging mechanism for causing the desired movement of the needles into the shed; the pattern chain mechanism being adapted to govern the longitudinal position of the needle bar, and control the operative connection of the needle bar with the engaging mechanism, whereby the said engaging mechanism may be caused to remain inoperative at any desired point in the pattern, substantially as described."

The question is raised as to the construction of this claim. The language is plain and unambiguous, and, in our opinion, its meaning is free from serious doubt. The claim is for a combination of devices "whereby the said engaging mechanism may be caused to remain inoperative at any desired point in the pattern." The combination consists of a needle bar, which the specification shows is the rear needle bar; pattern chain mechanism, which means a pattern chain mechanism having a series of pins, t, upon the links of the pattern chain, which engage the crooked end of the rock shaft, as shown in the specification; intermediate engaging mechanism for causing the desired movement of the needles into the sheds, which refers to the lifting rod moved up and down by the cam, the rock shaft with its crooked end, and other mechanism described in the specification. The claim also says, "The pattern mechanism being adapted to govern the longitudinal position of the needle bar, and control the operative connection of the needle bar with the engaging mechanism." This simply means that the pattern chain in this combination, in addition to having the pins, t, upon the links, which control the operative connection of the needle bar (which is the subject-matter of this claim), must also be adapted to govern the longitudinal position of the needle bar. It is apparent, however, upon reading the claim, and considering its subject-matter and operative parts, that the specific means described in the patent for governing the longitudinal position of the needle bar are not made an element of the claim, and that it covers any pattern-chain mechanism adapted to govern the longitudinal position of the needle bar. The "adjustable pattern screws or pins" which are made the subject-matter of claim 1 are independent of the means employed for accomplishing the result mentioned in claim 6. We hold that claim 1 forms no part of, and cannot be read into claim 6. In the Mac-Coll mechanism the needle bars are lifted by a lifting rod, which is continuously moved up and down by a cam, and passes upward through a guiding slot in a plate. In this slot the rod can be moved to and from the needle bars by an arm attached to a rock shaft. This shaft has a crooked end, which engages a series of pins upon the links of the pattern chain. The lifting rod has a flat end, and can pass under one or both needle bars. This end is always held in engagement with the forward needle bar, which is therefore never removed from operation. When a pin on a link of the pattern chain

comes in contact with the crooked end of the rock shaft, the end of the lifting rod is carried backward under the rear needle bar, by which means it is lifted as well as the forward needle bar. When, however, a link with no pin upon it passes around under the crooked end of the rock shaft, the end of the lifting rod is removed by a spring from under the rear needle bar, and only the front needle bar is operated. In defendant's loom the mechanism employed for keeping the needle bar out of operation is quite different. A lever is pivoted to the loom frame, and rests upon the pattern chain, constructed of links of different heights. This lever is connected by a rod with an elbow lever, which it moves in and out under a stop. This stop is on the lifting rod which raises and depresses the needle bar. When the lay swings forward, the needle bar raises the needles out of the warp. When the lay swings backward, the lifting rod and needle bar are pulled down, but, if the elbow lever is pulled under the stop, the lifting rod cannot be pulled down, and the needles remain up. The pattern chain acts through the elbow lever to keep the needle bar out of operation. In defendant's structure there is a "pattern-controlled stop which holds the needle bars up at times when it is desired to stop their operation." If MacColl were the first to invent a device for keeping the needle bar out of operation at any desired point in the pattern, his patent should receive a broad construction, but, if this feature in lappet looms was old, we think the difference between the means employed by the defendant and those employed by MacColl to accomplish this purpose relieve the former from the charge of infringement. The prior art shows that many years ago the improvement was adopted of having the pattern chain which governed the longitudinal position of the needle bar so constructed that it would also take the needle bar out of operation, and that this was done by means of high and low surfaces on the links of the chain. This is shown in the Smith (English) patent of 1854. In comparing the specific mechanisms of Smith and MacColl, Mr. Livermore, defendant's expert, fairly says:

"In both cases there is a pattern chain which determines the position of the needle bar at every operation (rise and fall) of the needles, and thereby determines the figure produced by the whip thread when the needles are operated. In both cases the same pattern chain carries a pattern surface, which determines when the needle bars shall and when they shall not operate (rise and fall); and in both cases this latter pattern surface controls the operation of the needle bar through intermediate engaging mechanism which either connects the needle bar with a lifter that operates continuously and thus causes the needle bar to operate, or disconnects it from said lifter, and thus permits or causes it to cease operating."

In view of the prior art, MacColl must be limited to the specific mechanism described in his patent, and it follows that the defendant does not infringe this claim.

The charge of infringement respecting the second MacColl patent, No. 570,260, is limited to the first two claims. The claims are as follows:

"(1) In a lappet loom, the combination of the lay and the needle bar carried by the lay with the pattern pins or projections and the engaging rod held independently of the lay, and a sliding connection between the needle bar and the

engaging rod, substantially as described. (2) In a lappet loom, the combination of the lay and the needle bar carried by the lay with the pattern pins or projections and the engaging rod held independently of the lay, means for holding the engaging rod against the pattern pins or projections, and a sliding connection between the needle bar and the engaging rod, substantially as described."

These claims relate to specific constructions. They are the same except as to the means for holding the engaging rod against the pattern pins or projections. For the purposes of this case they may be considered as one. In the first MacColl patent the pattern chain and engaging rod were carried on the swinging lay on which the needle bars are mounted. By the arrangement described in the second patent the pattern device and engaging rod are supported on the main frame of the loom, thereby relieving the swinging lay from this weight. This is effected by a sliding connection between the engaging rod on the frame and the needle bar on the lay, which causes the engaging rod and needle bar to act as one, so far as the controlling effect of the pattern is concerned. The general construction is as follows: The chain engaging rod which engages the successive pattern elements carried by the chain is supported in bearings on the loom frame. To this rod is rigidly attached an arm, the other end of which is strung on a guide wire, so that the arm can move back and forth on this wire as the engaging rod is moved back and forth by the pattern chain. With this first arm is connected a second arm, which is pressed by springs toward the first arm. Between these two arms is tightly held a downward arm, extending from the needle bar, which slides backward and forward in the guide formed by the two arms as the needle bar swings back and forth on the lay. When the engaging rod is moved to one side by a higher projection on the pattern chain, or carried back by the spring against a lower projection, the guide on the engaging rod carries with it the downward arm, and therefore the needle bar from which the arm extends. In lappet-looms this arrangement whereby the pattern surface is carried on the stationary framework of the loom, and connected by intermediate mechanism to the needle bar carried on the lay, was old and well known at the date of the MacColl patent, as this record abundantly shows. The most that MacColl can claim as patentable is his sliding connection between the engaging rod and needle bar, or the specific means he employs to accomplish the proposed result.

Assuming these claims to be valid, the question remains whether the defendant's loom contains the "sliding connection" of MacColl, or what can properly be considered its equivalent under the limitations which the prior art imposes upon these claims of his patent. We do not find in the defendant's loom the MacColl sliding connection, but an essentially different mechanism. The pattern chain in the Crompton loom is supported on the frame of the loom, and connected with the needle bar on the lay by connecting levers pivoted near the axis of the lay. This method appears to have been old. Upon the pattern chain rests a lever pivoted to the frame of the loom. A rod extends from the lever down to a connecting rod, which

is pivoted near the axis of the loom, and connected at its other end by another rod with a bell-crank lever. To the upper arm of the bell-crank lever is attached the needle bar. As the lever which rests on the pattern chain rises or falls, the intermediate levers pull the needle bar from one side to the other. Owing to the connecting rod being pivoted near the axis of the lay, the pattern chain, which is supported on the loom frame, is by this means connected with the needle bar on the lay without interference from the motion of the lay. This construction is radically different from the MacColl device. Decree of the circuit court is affirmed with costs to the appellee.