## UNION EDGE SETTER COMPANY *v.* KEITH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 283. Argued March 20, 23, 1891. — Decided April 6, 1891.

The first claim under letters patent No. 173,284, dated February 8, 1876, granted to Charles H. Helms for an improvement in sole-edge burnishing machines, namely, " in combination with the burnishing tool, and the rest for the face of the sole, the finger-rest D, substantially as described " falls within the many rulings of this court, holding that a mere aggregation of old elements in a new relation is not the subject of a patent.

THIS was a bill in equity for the infringement of letters patent No. 173,284, issued February 8, 1876, to Charles H. Helms for an improvement in sole-edge burnishing machines. In the introduction to his specifications, the patentee stated that his machine consisted " of a head or standard carrying a tool holder, holding a tool for setting or burnishing the edges of the soles of boots and shoes, and a finger-rest to aid the workman in holding the edge up to the tool, and the face of the sole against the rest, which is just below the burnishing part of the tool." After describing his machine by reference to the drawings, he stated his operation to be as follows: " The workman holds the shoe firmly in his hands, and thus presents the edge to be burnished to the tool, which reciprocates with great rapidity — about 1800 times per minute, I find, gives the best results. The workman passes [presses] the edge up against the tool, and the face of the sole against the surface which projects below the tool, and gradually moves the shoe so as to bring all parts of the edge to its action, steadying the shoe by the aid of the finger-rest D, especially when burnishing the corners of the toes. A little experience is necessary to enable the workman to use the machine to great advantage, but a skilled workman can do a very large quantity of work, second to none in quality. The combination of the finger-rest D with the burnishing tool, and the rest for the face of the sole, is the main feature of my invention."

The only claim alleged to be infringed was the first, which reads as follows:

" In combination with the burnishing tool and the rest for the face of the sole, the finger-rest D, substantially as described."

There were two other patents originally set forth in the bill, but by stipulation they were stricken out.

The defences set up in answer were, 1, the invalidity of the first claim of the patent, which was the only one relied upon by the plaintiff, and, 2, non-infringement.

Upon the hearing in the Circuit Court, the bill was at first sustained, but upon a rehearing, dismissed. The first opinion of the court is reported in 28 Fed. Rep. 715, and the opinion upon rehearing in 31 Fed. Rep. 46.

The errors assigned were:

1. That the court decided that the combination set forth in the first claim was not patentable.

2. That the court decided that neither of the three elements of the combination named in the first claim performed any new function.

*Mr. J. E. Maynadier* for appellant.

*Mr. John L. S. Roberts* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The machine described in this patent is designed for burnishing the edges of the sole of a boot or shoe after it has been trimmed by a cutter to the desired shape, and consists of a combination of three elements:

1. A tool for burnishing sole edges;
2. A lip or guard, which forms part of the tool;
3. A finger-rest.

After the sole is outlined and cut in proper shape, it is first required to be trimmed, and then to be burnished, so as to present a neat and finished appearance. The burnishing tool must be of the same shape in outline as the trimming tool, in order to properly burnish the parts of the edge which have been shaved or trimmed by the cutting tool. Cutting or trimming the edge of the sole and burnishing the same with a tool have been practised time out of mind in the art of making shoes; but within the past fifty years there has grown up a separate business in the manufacture of edge trimmers and edge burnishers, the outline of each tool corresponding with that of the other. The machine shown and described in the Helms patent in suit consists of a reciprocating tool-holder, carrying an ordinary burnishing tool, and an adjustable finger-rest or hook, the front surface of which projects just below the tool. The function of the tool is to burnish the edge of the sole in the same manner as when the sole is burnished by hand, the face of the burnishing tool corresponding to that of the cutter which has been used to trim the edge to the desired shape.

The function of the finger-rest or hook is to furnish a support to the finger and steady the hand of the operator when burnishing the sole edge, especially when burnishing the corners of the toe.

The controversy between these parties turns largely upon the meaning of the words "rest for the face of the sole," as used in the first claim of the patent, which reads as follows: "In combination with the burnishing tool and the rest for the face of the sole, the finger-rest D, substantially as described." While these words are used several times in the specifications, the rest is nowhere exactly located, nor is it lettered or otherwise indicated upon the drawing. The plaintiff contended that it referred to the guard or lower flange of the burnishing tool, which it claimed performed this additional function of affording a rest for the face of the sole, while the defendant insisted that it referred to the upper part of the finger-rest or hook.

If it refers to the upper part of the finger-rest, then it is admitted that the defendant does not infringe; if it refers to the lower flange of the burnishing tool, a further question arises as to whether there is any novelty in the combination.

Some light is thrown upon this question by a reference to the file wrapper and contents, which are spread upon the record. In his original application Helms states that his machine consists "of a head or standard carrying a tool-holder holding a tool for setting or burnishing the edges of the soles of boots and shoes, and a finger-rest to aid the workman in holding the edge up to the tool." This finger-rest D he describes as a "hook-shaped piece secured to the head near the tool, as shown in the drawings. For convenience it is mounted upon a tang, which is held by a set screw. It should be made of some non-conductor of heat, or else be wrapped with some non-conducting wrapper." In its operation he says "the workman presses the edge up against the tool and gradually moves the shoe so as to bring all parts of the edge to its action, steadying the shoe by the aid of the finger-rest D, especially when burnishing the corners of the toes." He winds up his specification by saying that "the finger-rest D is the main feature of my invention, all the other points of

novelty of my machine relating to new combinations of old elements," and claims —

1. In a burnishing machine the finger-rest D, constructed and operating substantially as described.

2. The combination of the finger-rest D, the burnishing tool, and the elastic holder B, as set forth.

The third claim is immaterial.

One thing is clearly apparent from this, and it cannot be better stated than the patentee himself has stated it, namely, that the finger-rest D was the main feature of his invention. To this application for a patent the examiner having the matter in charge replied that his first claim was anticipated in the patent of B. J. Tayman, March 11, 1873, No. 136,790. The Tayman patent, which is made an exhibit, shows a finger-rest identical with that of the patent in suit. In view of this rejection he amended his application by erasing the first clause of his claim, and substituting the following: "1. In combination with the burnishing tool, and the rest for the face of the sole, the finger-rest D, substantially as described." To this the examiner replied as follows: "Attention is called to the fact that the finger-rest in the above-cited case is stated to be the main feature of the alleged invention. A rest for the same purpose is shown in Tayman's patent, and the other elements claimed in combination have been shown by the references to be old separately, and if the finger-rest performs any new function in this instance, in combination with the tool and holder here used, it should be clearly stated. It is not understood what is meant by the words in the first claim now presented, viz., 'the rest for the face of the sole.' Additional amendment is therefore necessary before the case can be further considered."

Again the patentee amended his application, 1st, by inserting immediately after the words "to aid the workman in holding the edge up to the tool," the words "and the face of the sole against the rest which is just below the burnishing part of the tool." 2d. By inserting immediately after the words "the workman presses the edge up against the tool," the words "and the face of the sole against the surface which projects below

the tool." It will be observed here that in this first amend-ment the rest is described as just below the burnishing part of the tool. If the burnishing part of the tool be confined to the flat portion or bed, then the word "rest" would indicate that it was intended to apply to the lower flange. But amendment 2 would indicate that by the rest was meant the surface which projects below the tool, not below the burnishing part of the tool; and, therefore, forming no part of the tool, which would tend to support the claim of the defendant that it was intended to apply to the upper part of the finger-rest, which is the only surface which projects below the tool. 3. By erasing the paragraph immediately before the words "What I claim as my invention is," and substituting therefor the following: "The combination of the finger-rest D with the burnishing tool and the rest for the face of the sole is the main feature of my invention; all the other points of novelty in my machine also relate to new combinations of old elements." This also would indicate that the rest for the face of the sole was some-thing distinct, both from the finger-rest and from the burnishing tool, which is impossible, as it must necessarily form a part of one of them.

The changes between the specification and claims contained in his original application and those finally allowed, are shown in the following parallelism, the amendments being italicized:

| *Original Specification.* | *Patent allowed.* |
|---|---|
| "My machine is extremely simple, and consists of a head or standard carrying a tool-holder holding a tool for set-ting or burnishing the edges of the soles of boots and shoes, and a finger-rest to aid the workman in holding the edge up to the tool. | "My machine is extremely simple, and consists of a head or standard carrying a tool-holder holding a tool for set-ting or burnishing the edges of the soles of boots and shoes, and a finger-rest to aid the workman in holding the edge up to the tool, *and the face of the sole against the rest which is just below the burnishing part of the tool.* |

"The workman presses the edge up against the tool and gradually moves the shoe so as to bring all parts of the edge to its action, steadying the shoe by the aid of the finger-rest D, especially when burnishing the corners of the toes.

"The finger-rest D is the main feature of my invention, all the other points of novelty in my machine relating to new combinations of old elements.

"What I claim as my invention is, First. In a burnishing machine, the finger-rest D, constructed and operating substantially as described."

" The workman presses the edge up against the tool, *and the face of the sole against the surface which projects below the tool*, and gradually moves the shoe so as to bring all parts of the edge to its action, steadying the shoe by aid of the finger-rest D, especially when burnishing the corners of the toes.

" The *combination of the* finger-rest D *with the burnishing tool and the rest for the face of the sole* is the main feature of my invention; all the other points of novelty in my machine also relate to new combinations of old elements.

" What I claim as my invention is, 1. *In combination with the burnishing tool and the rest for the face of the sole*, the finger-rest D, substantially as described."

From this it is entirely clear that the patentee supposed originally that he was the inventor of the finger-rest, but upon being referred to the Tayman patent, and finding that he had been anticipated, he resorted to the device of "a rest for the face of the sole" to save his patent. Not only is the location of this rest left in considerable doubt as a matter of construction from the face of the patent, but the oral evidence as to the intention of the patentee, and as to the actual operation of the machine, is scarcely less ambiguous. When first called as a witness, the patentee Helms stated: "What I intended to be the rest for the face of the sole, when burnishing a shoe edge, was a finger-hook so constructed that it would at once answer for a rest of the sole of a shoe, and a

guide to help the operator to steady the shoe under the action of the polisher while in motion by grasping the hook with his finger."

In answer to the question, "Please point out upon the exhibit Helms's model, the part referred to in the patent as the rest for the face of the sole?" he said, "That part I should designate as below the polisher and on the front of the hook." He again states that it was his original intention to keep the tread or bottom of the sole in contact with the face of the finger-hook while burnishing the toe portion of the shoe, and that it was feasible on a great many kinds of goods. He also states that the drawing of the patent shows, according to his judgment, that the tread or bottom of the sole does not touch the front face of the finger-rest, "which appears to me to differ somewhat from the real intention shown by me." On being subsequently recalled, however, and being shown the Patent Office model of his patent, he says he should not think it possible to polish the sole properly on a machine of that pattern while holding the face of the sole against the finger-rest; and upon being asked what he intended to be the rest for the face of the sole in burnishing sole edges with such machine at the time he filed his application for patent, says: "I shall have to say that when I filed the application for this patent, which the model represents, that it must have been the back lip of the polisher shown in the model." In fact his testimony is so confused and contradictory that it is impossible to make anything out of it, except that, on finding his finger-rest to have been anticipated, he fell back upon the rest for the face of the sole, as a *dernier resort*, to save his patent, without clearly understanding in his own mind what was meant by the words.

A witness who had used the machine at a factory in Albany testified, that during four seasons he burnished sole edges on the Helms machine, always resting the face of the sole against the finger-hook. Another, who was foreman of a shop at Brockton, Mass., testified that when 'the machine was first used they placed the face of the shoe against the tool, and the face of the sole against the finger-rest, and so used it for

about four weeks. It would appear from this testimony that the patentee's original idea was that the front face of the finger-rest constituted a rest for the face of the sole, and that in accordance therewith the first machines were made with the finger-rest projecting far enough forward under the burnishing tool to furnish a rest for the sole. This, however, was found to be impracticable, and the use of the upper part of the finger-hook as a rest seems to have been abandoned, and the claim made that the lower flange was intended as a rest. The truth seems to be that, if the finger-rest be moved far enough forward and the front surface shaped at the proper angle, the face of the sole can be rested thereon, but when moved some distance back it becomes impracticable.

We do not find it necessary, however, to express a decided opinion as to the construction of this patent. In view of the ambiguity of the language used, and of the confusion and contradiction in the oral testimony, we prefer to adopt the construction contended for by the plaintiff, and dispose of the case upon another ground. Conceding the plaintiff's construction to be correct, and reading the first claim as if the rest for the face of the sole were a distinct element, we find the combination of this claim to consist, 1, of a burnishing tool; 2, a flange at the lower edge of such tool, against which the operator may rest the sole ; 3, a finger-rest. All of these elements are old. Burnishing tools have been employed for finishing off the edges of boot soles from time immemorial, and the flange or guard which the patentee dignifies as a rest for the face of the sole was attached to the old hand tools before the invention of burnishing machines, and has since been attached to machines operated by power, as shown in patent No. 28,181, to Elias T. Ingalls, which describes a reciprocating tool having a flange or guard, called in the patent "a horizontal lip," which bears on the face of the sole. It may be true that Helms was the first to use a burnishing tool having a guard, in connection with a finger-rest, and that his machine is probably superior to other devices of like design, but as all of these elements were old, and no new function is performed by the combination, it is a case of mere aggrega-

tion, which it is well settled is not patentable. The Tayman patent shows the finger-rest in connection with a cutter for trimming the edge of the sole, at one end of a shaft, at the other end of which is a revolving burnisher, to which Tayman did not see fit to attach his finger-rest. It certainly did not require invention to change the finger-rest from one end of the shaft to the other, or to attach it to a reciprocating instead of a revolving burnisher, both being old, nor does it add to its importance to change the name of the guard or lip, and call it a rest for the face of the sole.

Undoubtedly the result is a more perfect machine, but it is simply more perfect because of the coöperation of a greater number of elements, and not because of any new function performed by the combination. Counsel for the plaintiff has made a most ingenious argument to show that a new function is performed by the combination in determining the tilt or slant of the sole by the angle required of the edge with the tread. But that is rather an incident to the operation of the machine, attributable to the skill and deftness of the operator, than any new and distinct function belonging to the machine itself.

If any separate function had been performed by this combination, it is somewhat singular that the patentee did not call attention to it in his original application, or until after the main feature of his patent was shown to have been anticipated. We think that this patent falls within the many rulings of this court holding that a mere aggregation of old elements in a new relation is not the subject of a patent. *Reckendorfer* v. *Faber*, 92 U. S. 347 ; *Pickering* v. *McCullough*, 104 U. S. 310 ; *Stephenson* v. *Brooklyn Cross-Town Railroad*, 114 U. S. 149 ; *Hendy* v. *Miners' Iron Works*, 127 U. S. 370 ; *Hailes* v. *Van Wormer*, 20 Wall. 353.

It results that the decree of the court below dismissing the bill must be

*Affirmed.*