# BALL AND SOCKET FASTENER COMPANY *v.* KRAETZER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 58. Argued October 27, 1893. — Decided November 6, 1893.

The fourth and seventh claims in letters patent No. 325,688, issued to Albert G. Mead, September 8, 1885, for a "button" are not infringed by glove fasteners manufactured under letters patent Nos. 359,614 and 359,615, issued to Edwin J. Kraetzer, March 22, 1887; and though it would be possible to make out a literal infringement of the sixth claim, by con-

struing the claim broadly, the court holds that the patentee is not entitled to such construction.

There is no equity in charging infringement upon a defendant in a patent suit, in consequence of an apparently accidental adoption of an immaterial feature of the plaintiff's patent.

When costs are unnecessarily increased by the incorporation of useless papers, costs may be imposed upon the offending party under Rule 10, Paragraph 9; and they are imposed in this case.

THIS was a bill in equity originally filed for the infringement of six letters patent for improvements in glove fasteners, five of which patents were issued to William S. Richardson and one to Albert G. Mead.

A plea having been filed upon the ground of multifariousness, two of the patents were stricken from the bill upon the application of the plaintiff.

The only patent relied upon at the hearing or covered by the assignments of error was that to Albert G. Mead, No. 325,688, issued September 8, 1885, for a "button." In his specification patentee states: "This invention relates to metallic fastenings employed in securing the separate flaps of any article, such as gloves or other similar articles of wear, in lieu of the ordinary button and button-hole, and pertains especially to that class entitled 'ball-and-socket fastenings' in which a ball is adapted to be enclosed by and retained within the hollow or socket member, when the fastening is actively employed. I consider my present invention embraces, first, the method of centrally securing the socket portion of the fastening to the article, whereby the open part or socket of said member is disposed upon the under side of the flap, and secured by a rivet extending through the fabric, thus in permanently securing it to the latter a suitable button-head or cap is employed upon the upper surface of the flap, and can be so formed and constructed as to form a button finish, a result much desired, since it gives the article an appearance exactly similar to an ordinary button, which is the most neat and tasty finish that can be employed in the class of articles of apparel to which such fastenings are usually attached, but, further, the whole device is thereby concealed and prevented from becoming caught and broken; secondly, in the peculiar method of form-

ing the ball member of said fastening, as likewise that of the rivet by which the ball is secured to the fabric, the two parts forming a unit and readily used in connection with the socket member, forming an article very easily manufactured, cheap, and inexpensive, and one which presents an unusually ornamental finish."

Defendant was manufacturing under letters patent Nos. 359,614 and 359,615, granted to him March 22, 1887, for improvements in glove fasteners.

The case was heard upon pleadings and proofs, and the bill dismissed upon the ground that the defendant had not infringed. 39 Fed. Rep. 700.

No appeal was taken from the decree of the Circuit Court dismissing the bill as to the three Richardson patents remaining, and the appeal only involved the consideration of the fourth, sixth, and seventh claims of the Mead patent. These claims were as follows:

"4. In a fastening device of the nature described, the enclosing portion composed of a hollow socket centrally secured to the fabric by a button-head, F, and with the enclosing portion disposed upon the under side of the flap, substantially as stated.

"6. A member of a fastening device consisting of a hollow socket, in combination with a rivet and button-head, whereby it is centrally attached to the fabric, substantially as set forth.

"7. A member of a fastening device composed of a hollow socket, D, centrally attached by an eyelet, *l*, the latter resting upon and within an annular depression, *q*, formed in a concaved collet or disk, E, substantially for the purpose herein set forth."

*Mr. Thomas William Clarke* for appellant.

*Mr. John R. Bennett,* (with whom was *Mr. W. B. H. Dowse* on the brief,) for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The invention of Mead consists of a glove fastener having on the button side a knob with a shank to it, which passes

through two washers, one of which washers is above and the other below the glove fabric, and the shank is upset on the lower side of the lower washer. The swell of the knob is sufficient to allow of an engagement with the clasp or spring sides of the button-hole member of the fastener. This button-hole member, which is the one alleged to be infringed, consists of an imperforated cap or button-head, F, and an elastic socket, D. The button-head F consists of three parts, a solid cap, F, an interior disk, E, perforated at the centre, and the attaching eyelet *l* descending from it. A modification of this portion of the device is shown in Fig. 12, wherein the imperforated cap or button-head, F, is omitted, the button-head consisting simply of a dished washer, E. In this form, which is as efficient and much cheaper, the eyelet is made flush with the exterior surface of the disk, E. In order to present a more perfect

finish, and at the same time to prevent the edges thereof from catching, the patentee forms an annular depression in the top of disk E, to a depth equal to the thickness of the metal forming the eyelet. Thus a smooth exterior surface is secured.

In both forms of his device, illustrations of which are here given, the dished washer is necessarily present, because it is the thing which, by being riveted to the spring-mouth socket, serves to fasten the structure to the glove-flap, the leather of which is squeezed by the exterior of the socket against the interior of the button-head or dished washer E.

The socket, D, consists of a cup-shaped washer with spheroidally-curved wings. The cup-shaped washer, with its wings curved slightly inward at their lower edges, and thus presenting a contracted but outwardly-yielding mouth, consti-

tutes the spring-socket for receiving and holding the knob. The upper part of this socket is perforated at its centre to receive the rivet or eyelet projecting downward from the upper portion of the cap. In the application of this fastener to a glove fabric, a hole is pierced in the fabric large enough for the passage of the eyelet, and the two hemispheroidal metallic surfaces, one of which surfaces is the outside of the upper part of the socket, and the other of which is the inside of the cap or exterior piece, are for some considerable distance parallel to each other, and thus the fabric of the glove is stretched into a dome shape, by being compressed or nipped between the back of the socket and the inside of the cap, and is firmly held by this engagement.

It is admitted that Mead did not invent this spring socket, nor the perforation at its centre; and while he did not invent the attachment of that socket to the fabric by a flat washer, the surface of which lay in a line parallel to the tangent line of the upper surface of the dome of the socket, it is claimed that he did invent the application of a curved or cup-shaped cap in the place where the flat washer had previously been.

In the Kraetzer patent, the button-hole member, of which an illustration is given below, consists of a perforated top shell

Kraetzer Fastener.

or cap, A, with a central opening, B, which is surrounded by an annular depression or countersunk cavity. The opening, B, is adapted to receive the upper end of a spring shell, which has an annular shoulder, E, at its base, and a contracted neck at its top. The spring which engages the button member of the Kraetzer fastener is a coiled-wire ring, split on one side, so as to expand as the button passes through it. This spring ring is loosely held in its chamber. The spring chamber is

composed of two pieces of metal united around their edges, one of which has a tubular extension which passes through the fabric and is engaged with a cap or button-head on the other side of the fabric.

In the Mead socket the resiliency of the button-hole member is in the socket itself, which is directly attached to the fabric. In the Kraetzer fastener the part which engages the button-head or stud serves no other purpose whatever, but rests loosely in the chamber of its holder. This holder or shell is clamped permanently and firmly to the fabric, and is never expanded or contracted as in the Mead socket. In engaging and disengaging the fastener, the wire ring alone expands and contracts.

From this statement of the construction of the two devices, which can be made more apparent by a comparison of the drawings, it is very evident that they are constructed upon different principles and operated in a wholly different manner.

But it is claimed that an elastic mouth, combined with and firmly united to a dome, the mouth and dome being situated wholly on the under side of the flap and secured by a button-head wholly upon the upper side of the flap, was not known in the art prior to the Mead patent, and that the effect of this is, taken in connection with the fact that the hole in the flap need not be any larger than the diameter of the rivet, as stated by the plaintiff's expert, "that the spring socket presses the glove leather upward into the button-head, and squeezes the leather against the inner surface of the button-head." If this feature be an advantage, as now claimed, it is strange that no allusion is made to it in the specifications; and in his testimony the patentee stated directly that in describing his invention as set forth in his patent, in the attachment of the fastener to the fabric, he did not contemplate any stretching of the leather, or that the hole in the fabric should be of any particular size, or any other effect than is produced when two parts are fastened together by an eyelet. On the contrary, it would appear that this squeezing of the leather could only take place where the disked washer or cap was used, and in his specifications the patentee states that "the disk, E, may

be a flat plate, but, in the present instance, I have shown its outer edge or circumference bent in order to approximate to the general shape of the button-head when the latter is pressed into its finished form," and thus it strengthens said cap. This would indicate that the advantage now claimed of a tighter compression of the leather was not originally within the contemplation of the patentee, but is an afterthought, suggested by his inability to make out a case against the defendant of an infringement of the spring portion of the socket.

Applying these considerations to the different claims of the patent, it is quite evident that there is no infringement of the fourth claim, which includes as an element the imperforated button-head, F, which is not found in the Kraetzer patent.

It is equally clear that there is no infringement of the seventh claim, since the Kraetzer device has not " the hollow socket, D," but a socket of a wholly different construction, operating in a different manner, and depending for its elasticity, not upon the peculiar inwardly projecting wings of the Mead socket, but upon a ring concealed within its walls. Neither has it the eyelet *l*, unless the tapering upper end of the spring shell of the Kraetzer patent can be regarded as an equivalent.

The charge of infringement must rest, then, upon the sixth claim, which is for " a member of a fastening device consisting of a hollow socket in combination with a rivet and button-head, whereby it is centrally attached to the fabric, substantially as set forth." While, by construing the " hollow socket " broadly as including every kind of a hollow socket appropriate for that purpose, and by construing the upper part of such socket as equivalent to the rivet, *l*, of the Mead patent, it would be possible to make out a literal infringement, yet we do not think the patentee is entitled to such a broad construction of his claim, in view of the fact that the only function obtained by the defendant in the use of his combination is that of squeezing the leather upward into the button-head — a function of very doubtful advantage, and apparently of no value to the Kraetzer device, and one never contemplated by Mead or alluded to in his specification. We think it too frail

a support to hang a charge of infringement upon. When the essential operation of the two devices is so different there is no equity in charging infringement upon the defendant by an apparently accidental adoption of an immaterial feature of the plaintiff's patent.

We are, therefore, of opinion that the court below committed no error in its disposition of the case; but, in view of the fact that the appellee has seen fit to encumber the record with copies of some fifty immaterial patents, we think it a proper case for the application of the 10th rule, which authorizes us (paragraph 9) to impose costs upon an appellee guilty of requiring unnecessary parts of the record to be printed, and that he should be charged with half the cost of printing the record in this case. "Care should be taken that costs are not unnecessarily increased by incorporating useless papers, and that the case is presented fairly and intelligently." *Railway Co.* v. *Stewart*, 95 U. S. 279, 284. With this qualification the decree is                                                        *Affirmed.*