GAMBLE–SKOGMO, Inc., et al. v. PAUL E. HAWKINSON CO. et al.

No. 11148.

Circuit Court of Appeals, Eighth Circuit.

July 13, 1938.

Rehearing Denied Aug. 11, 1938.

George K. Stebbins, of Pittsburgh, Pa. (C. A. Taney, Jr., of Minneapolis, Minn., Albert Grobstein, of Washington, D. C., W. S. McDowell, of Detroit, Mich., and Fowler, Youngquist, Furber, Taney & Johnson, of Minneapolis, Minn., on the brief), for appellants.

Ralph F. Merchant, of Minneapolis, Minn. (Frank D. Merchant and Merchant & Merchant, all of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellees brought suit in the district court charging appellants with infringement of the Hawkinson patents No. 1,917,261 and No. 1,917,262. The defenses are invalidity and no infringement. There was a decree for the plaintiffs and the defendants appeal.

Both patents pertain to the art of retreading worn automobile tire casings. A tire casing is the outer part of the tire within which the inner tube is placed. It is made of fabric covered with vulcanized rubber. The casing consists of three parts: (1) The bead rims, or enlarged parts of the tire usually containing metal cables, which are held by the wheel rim; (2) the side walls, or the parts between the bead and the tread; and (3) the tread, consisting of the thickened portion of the tire which bears upon the road. That part of the outer surface of the tire which directly engages the road is called the crown. The somewhat angular portions at the margins of the crown are called shoulders.

In use the most rapid wear is upon the crown of the tire. The rubber upon this surface wears off before the rest of the tire is worn out. If the rubber at this point can be renewed without injuring the underlying fabric and the sidewalls, the life of the tire can be materially prolonged. The art of replacing the worn out rubber on the crown has grown and developed with the development of the automobile tire business.

In general the process of renewing the worn out rubber has always been (1) to prepare the crown by removing the old rubber or by cleaning and roughing it, (2) to cement a strip of raw or unvulcanized rubber on the clean surface, and (3) to "cure" or vulcanize the new rubber in the desired shape and to secure it to the body of the tire by the application of heat and pressure. For the accomplishment of this process a metal mold or matrix is used, with the necessary auxiliary facilities to supply heat and pressure. These essentials of the process and various devices for retreading tires were in use when Hawkinson entered the field.

The Hawkinson patents were both issued July 11, 1933. No. 1,917,261 is for a method or process for retreading tires, and No. 1,917,262 covers a device or apparatus for use in retreading. Only claim 6 of the method patent and claims 4, 5, 6, 9 and 10 of the apparatus patent are involved in this suit. Claim 6 of the method patent reads:

"The method of treading tire casings, which comprises applying a tread material to the crown of the casing intermediate the shoulders thereof, in placing the casing within and permitting expansion of the same against an annular matrix that engages only the newly applied crown tread and adjacent shoulders of the casing, whereby to confine the newly applied tread material between the shoulders when under pressure and in a flowing condition, in applying internal expanding pressure to the casing to expand the same against the matrix, and applying heat to the matrix."

Claim 4 of the apparatus patent is typical. It reads:

"A tire treading device consisting of an integral cylinder-like mold having continuous tread material confining flanges inwardly projecting from the marginal portions of said mold, said flanges being of such construction and extent as to make only line contact with laterally spaced shoulder portions of a tire and support the mold over the crown portion and out of contact with side wall portions of the tire, and heating means extending circumferentially of the mold."

Claim 5 adds to the combination thus described, "means to vent the mold between the tread confining portions thereof;" claim 6 further describes the mold as "substantially flat in cross section and composed of relatively light flexible material such that it will be brought into true round by circumferential expanding pressure of a tire placed therein;" and claims 9 and 10 describe combinations of the same features.

In the specifications of the patent it is said the important objects of the invention are to provide a light-weight annular tire treading mold that can be easily handled, that will heat and cool rapidly, that is resilient so that it can be brought into true round by the circumferential expanding pressure of a tire within, and a flexible heating means extending circumferentially and which will flex with the mold.

As the advantages of the Hawkinson patents counsel enumerate in the briefs

certain economies, together with the added advantage that the tire is retreaded without subjecting the sidewalls to heat. It is also said that certain benefits accrue from curing the new rubber while the crown is in a flattened position rather than in a mold which is curved to conform to the normal shape of the crown. The invention claimed for both patents is stated by counsel as follows:

"Hawkinson had an entirely new conception. He realized that the heat must positively be kept away from the side walls of the tire. * * * He conceived of a method in which the shoulders and portions of the old tread would be left on the tire and the newly added tread material would be confined between the shoulders and on the crown. * * * The tire is engaged by the hot mold only on the top of each thick shoulder * * *. The heat is thus very efficiently used and is kept away from the side walls."

The mold, as illustrated in both patents and as exhibited to the court, is an unbroken ring formed by brazing together the ends of a band of light flexible metal approximately 1/32 of an inch thick. The "heating means extending circumferentially of the mold" is a copper coil through which live steam circulates.

The necessary pressure of the mold upon the new rubber during the vulcanizing process is obtained by using a mold whose inside circumference is slightly smaller than the outside of the tire. By spreading the bead the circumference of the tire can be contracted, and it can then be slipped into the mold and there allowed to expand. The inner tube is then inflated to increase the expanding pressure.

The accused device consists of a split mold which is forcibly drawn together to contract it against the tire and thus provide pressure. When the ends of the split mold are drawn together they are fastened with bolts, and the mold when thus in operation forms a completed circle. The mold is not cylinder-like or substantially flat but has a curved cross section to fit the rounded surface of the tire. It is made of relatively heavy steel plate 1/8 to 1/2 inch thick. The mold is provided with marginal flanges which do not extend down upon the sidewalls of the tire. It has no heating means extending around it on the outside comparable to the steam coils of the patented device, but is heated by electricity passed through the body of the mold.

We shall first consider the one issue which involves the validity and infringement of both patents. It is the claim of plaintiffs that the exemplification of inventive genius lies in the protection of the sidewalls of the tire from injury by heat in the process of vulcanizing the new rubber on the crown; and the charge that in this particular the defendants infringe both patents. The determination of this problem requires a review of the prior art.

The early vulcanizing was done by placing the entire tire and mold in a steam filled kettle. Jones (patent No. 1,467,761, 1923, application 1921) taught that heat must be confined to the new tread and that the interior of the tire and the sides beyond the tread must be "protected against the action of the vulcanizing heat." In 1932 he was issued a patent (No. 1,852,886) for an improvement upon his original device. In this patent he claimed to have invented "A tire retreading mold having a tread engaging portion of high heat conductivity and those tire engaging portions away from the tread engaging portion of low heat conductivity; combined with means for cooling the latter portions." Jones distinctly recognized the problem and, in some measure, solved it.

In 1921 Mundale (No. 1,379,203) disclosed a split mold covering the peripheral portion of the tire casing with matrices heated by steam and against which pressure was maintained by inflating the inner-tube. One of his purposes was to retread the tire in a single operation and at the same time avoid overheating the other portions of the tire.

In 1926 the Ruark mold was patented (No. 1,608,816). In the specifications Ruark declares:

"The general object of the invention is the provision of a vulcanizing mold which when used in the operation of retreading the shoes of rubber tires, will not operate to apply heat to the sidewalls of the shoe inwardly beyond the tread, but to confine the heat for vulcanizing purposes to the tread itself. In this way all liability to injury of the sidewalls from excessive heat is avoided."

The mold was made in two sections clamped together when in operation, annular in contour, with the inner surface

arcuate in cross section with the tread pattern thereon. Pressure when in operation was secured by an inflated inner tube and heat was applied by circulating steam through a steam chamber "disposed radially outward and beyond the sidewall of the tire shoe being operated upon so that the heated walls of these chambers, by virtue of their position, cannot operate upon the sidewalls of the tire shoe and thereby injure the same."

■ In view of the recognition given to the heat problem by Jones, Mundale and Ruark it seems strange that Hawkinson did not refer to the matter in his applications or specifications as an advantage or virtue of his patents. The plaintiffs rely upon the rule that the patentee is entitled to whatever the advantages of the invention appear to be, whether specifically stated in the application for patent or not. General Electric Co. v. Bullock · Electric Mfg. Co., 6 Cir., 152 F. 427; Byers Mach. Co. v. Keystone Driller Co., 6 Cir., 44 F.2d 283; Kennicott Co. v. Holt Ice & Cold Storage Co., 7 Cir., 230 F. 157. Nevertheless the failure of the application to mention grounds now relied upon to sustain the patents is significant and suggests that the argument now advanced is an afterthought. Lincoln Engineering Co. v. Stewart Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L. Ed. 1008, decided March 28, 1938; Union Edge-Setter Co. v. Keith, 139 U.S. 530, 539, 11 S.Ct. 621, 35 L.Ed. 261; Ball & Sockett Fastener Co. v. Kraetzer, 150 U.S. 111, 116, 14 S.Ct. 48, 37 L.Ed. 1019; MacColl v. Knowles Loom Works, 1 Cir., 95 F. 982, 986; Kursheedt Mfg. Co. v. Naday, C.C., 103 F. 948, 950.

■ Plainly, in so far as protection of the sidewalls of the tire from heat is involved, Ruark especially anticipated Hawkinson by approximately seven years; unless by the term "tread" Ruark meant more than the crown of the tire. Plaintiffs argue that the word "tread" applies to a region of the tire much more extensive than the crown; that the tread extends down the sidewall of the tire for some distance. Attention is also directed to the rounded cross-section of the tire in Ruark's illustration as indicating the inventor's intention that the shoulders be removed and the mold brought in contact with the sidewalls. These contentions are refuted by some obvious facts. The only place new rubber is essential in retreading is on the road-engaging surface between the shoulders, where the old rubber has worn off. Since the new rubber, in vulcanizing, becomes fluid, it is necessary that the mold come into sealing contact with the old tire on either side of that surface at or beyond the shoulders. · Ruark's express object was to avoid heating the sidewalls. The context clearly implies that in directing that the heat be confined to the "tread" Ruark meant no more than the road-engaging surface. By the disclosures of Ruark any mechanic would understand, if the fact were not obvious already, that the solution of the problem of overheated sidewalls is to make the vulcanizing mold so narrow that it will not touch the parts which should be kept unheated. There is no justification for the position taken by plaintiff that Ruark intended to avoid heating the lower sidewalls, but not the equally-vulnerable upper sidewalls near the crown. Plaintiffs' argument based upon illustrations is misleading. Ruark's sketches do not show the construction of the tire, but only indicate roughly its location in the mold. The inventor's description simply states that the mold shall bear upon the entire tread surface of the tire shoe, without specifying how the shoe is to be prepared or requiring that it be in any particular shape.

Another consideration to be kept in mind in interpreting these patents is the development in tires. At the time the Ruark patent was issued the shape of the tire was somewhat different from what it was at the time the Hawkinson patents were issued. The tread portion of the tire had been thickened, with the result that the shoulders are more pronounced in modern low-pressure balloon tires than in the earlier tires. In Ruark nothing was said of shoulders because they had not at that time been developed to such an extent as to be called shoulders.

No significance can be attached to the fact that defendants copy plaintiffs' practice of not cutting off the shoulders in preparation for retreading. Plaintiffs' own experts testified that recapping, which they emphatically declare to be entirely different from the Hawkinson process, is often done without cutting off the shoulders; the surface is merely cleaned, trued, and roughened by buffing.

■ We must therefore conclude that Hawkinson disclosed no patentable method or device for protecting the sidewalls of tires from injury by heat. In so far as

his patents deal with this problem they are invalid for anticipation, since in this respect the Hawkinson process is but the normal and intended operation of a device disclosed in a prior patent. Claude Neon Lights v. E. Machlett & Son, 2 Cir., 27 F. 2d 702, 708; In re Ackenbach, Cust. & Pat. App., 45 F.2d 437.

■ The separate and particular features of the apparatus patent will next be considered. The claimed combination has these parts and these attributes: (1) An integral cylinder-like mold (a) substantially flat in cross section, (b) composed of relatively light flexible material such that it will be brought into true round by circumferential expanding pressure of a tire placed therein; (2) the mold having continuous tread material confining flanges inwardly projecting from the marginal portions of the mold and making sealing contact with the shoulders of the tire to support the mold over the tire crown and leave the sidewalls exposed; (3) means to vent the mold; and (4) heating means extending circumferentially of the mold.

The first claim of infringement relates to the "integral" character of the mold or matrix. The contention is that the accused mold when in operative position with its ends clamped together is a complete ring and infringes the patent. This contention of appellant is not tenable when the prior art is considered. In the Dunlop, British, patent No. 334,657, issued in 1930, the tread forming band, or mold, "is formed of a split ring of comparatively thin flexible material its ends being anchored to a plate." In the Lauer patent No. 1,271,589, issued July 9, 1918, the new rubber to be vulcanized to the tire is held in position "by means of an annular split clamping band." The molds of Ruark and Mundale also fully encircled the tire when fastened in operative position. The only novelty, therefore, in the patent mold is the fact that it is not split but its ends are brazed together permanently. The accused mold does not infringe; it resembles the prior art. The contention that the accused mold infringes because it is "continuous" and because it is "cylinder-like" is without merit for the same reason that it does not infringe because it is "integral."

It is argued that because defendants' mold is cross-sectionally flatter than those illustrated in the prior patents, it infringes Hawkinson's "substantially flat" construction. There is, however, an important difference. The prior art shaped the contour of the mold to conform to the normal contour of the tire; while the Hawkinson patent discloses a device which holds the tread in an unnaturally flat position. Counsel for plaintiffs, seeking to sustain the patent, argue that this change is a useful improvement. Defendant follows the prior art in using a mold whose shape is the normal contour of a new tire. It is flatter than the molds pictured in the patents issued many years ago because tires today have flatter treads. In the use of flanges along the edges of the matrix defendants are following Mundale.

Neither does the "heating means" invade the patent. Hawkinson's commercial model uses a copper coil through which steam is passed under pressure. The coil runs circumferentially of the tire being treaded. In the accused device the heat is generated by a current of electricity applied to the mold. The fact that the heat is applied circumferentially is not novel. In the Lauer patent supra the "heating means" is applied circumferentially also, and is effected by an electric current. The vents for the escape of air in the vulcanizing process are found in Mell No. 906,-256, issued in 1908, and in De Mattia No. 1,746,107, issued Feb. 4, 1930.

Considered in connection with the prior art we find none of the novel features of the Hawkinson apparatus patent infringed by the defendants' device. We turn, therefore, to the method patent No. 1,917,261.

The steps in the method patent are: (1) Applying the tread material (rubber) to the crown of the casing intermediate the shoulders; (2) placing the casing within and permitting expansion of the same against an annular matrix that engages only the newly applied crown tread and adjacent shoulders of the casing; (3) whereby to confine the newly applied tread material between the shoulders when under pressure and in a flowing condition; (4) applying internal expanding pressure to the casing to expand the same against the matrix; and (5) applying heat to the matrix.

■ Appellees insist that the accused device infringes each and every one of the steps of this patent. As observed earlier in this opinion all these steps in the main are old and in common practice in the art of retreading. Claims of improvement in a crowded field are narrowly construed, and are not permitted a wide range of

equivalents. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U.S. 399, 25 S.Ct. 697, 49 L.Ed. 1100; Paper Bag Patent Cases, 210 U.S. 405, 28 S.Ct. 748; 52 L.Ed. 1122; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978; Whitney v. New York Scaffolding Co., 8 Cir., 243 F. 180.

█ Applying the tread material "intermediate the shoulders" and confining it to that locality during the vulcanizing process by a matrix which engages only the shoulders of the tire is the art of Ruark and Mundale, as is pointed out above. The only purpose of the engagement of the matrix upon the body of the tire is to seal the crown and prevent the escape of the rubber while it is in a flowing condition. Every retreading device shown in the prior art has a mold which performs this function. The mold of Ruark, constructed to confine the heat to the portion of the tire between the shoulders, is necessarily a mold which confines the new rubber to the same locality.

It is true the defendants, like all others who practice the art, place the casing within their matrix or mold. It is not correct to say, however, that they obtain pressure by "permitting expansion of the same against an annular matrix," as does Hawkinson in his second and third steps. In the accused device pressure upon the tread material is produced by contracting the split matrix upon the crown of the tire and clamping it together to hold it in that position for vulcanizing. In both the Hawkinson and the accused device pressure is increased by forcing air into the inner tube and expanding it against the mold. This is not novel, however. It is common practice (Batcheller, No. 1,113,925, 1914; Midgley, No. 1,542,797, 1923; Bancroft, No. 636,237, 1899; Burdette, No. 1,746,763, 1930; Ruark, No. 1,608,816, 1926).

Finally, the application of heat to the matrix is neither new nor novel. It is not only common to both devices here under consideration, but it is essential and necessary and is used in almost all of the prior art patents referred to supra. The Hawkinson description of a suitable device also describes the methods used by Ruark, Burdette (No. 1,746,763) and Shriver and Heasley (No. 1,330,958).

█ The conclusion is inescapable that the claims of the Hawkinson patents set forth for the most part combinations of elements old in the art of retreading, and that the methods used involve few, if any, new or original conceptions. At most plaintiffs are entitled to a monopoly only upon those features which appear to be new. With the scope of the patents thus limited they are not infringed by defendants.

The decree appealed from is reversed, with instructions to dismiss the bill of complaint.

Reversed.