GOODMAN et al. v. PAUL E. HAWKINSON CO.

No. 9601.

Circuit Court of Appeals, Ninth Circuit.

May 29, 1941.

Rehearing Denied Aug. 4, 1941.

Chas. E. Townsend, of San Francisco, Cal., for appellants Goodman and others.

A. Donham Owen, of San Francisco, Cal., and Merchant & Merchant and Ralph F. Merchant, all of Minneapolis, Minn., for appellant P. E. Hawkinson Co.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an action for infringement of the broad claims 6 and 8 of patent No. 1,-917,261 for a method of retreading worn tire casings, issued to P. E. Hawkinson July 11, 1933 upon application filed May 14, 1931. The trial court held that claim 6 was invalid but that claim 8 was valid and infringed by the defendant. Both sides appeal.

This patent was considered by the Circuit Court of Appeals for the Eighth Circuit in Gamble Skogmo v. Hawkinson Co., 98 F.2d 37, wherein it was held that claim 6, if valid, should be narrowly construed and, so construed, was not infringed.

At the time Hawkinson applied for his patent the method of retreading or repairing worn automobile tire casings was to cover the worn surface of the tire with a composition of rubber and sulphur suitable for vulcanization and then to vulcanize the composition by the application of pressure and heat in a suitable machine. The method of vulcánizing rubber was well known and the obvious point for the application of the new rubber composition was in the place where the rubber had been worn away.

Many patents had been issued prior to the application of Hawkinson on June 11, 1933 for appliances for vulcanizing the rubber composition applied to replace the rubber worn from the tire. Some of these prior patents are cited as anticipating that part of the alleged invention in suit which is expressed in the broad claims 6 and 8 of the patent. Others are cited to show the state of the art at the time of the alleged invention.

Before entering upon the further consideration of the invention, additional facts should be stated. In the case of a used pneumatic tire there is not only an actual abrasion and wearing away of part of the rubber covering the casing but also a distortion of the casing itself. The casing becomes larger with use because the fiber upon which the tire is built is stretched. Even when new the tires of the same nominal size vary somewhat in actual size. As it is necessary in vulcanizing a tire to have it fit snugly in the mold and to be pressed against the inner surface of the mold during vulcanization, it is obvious that the procurement of a suitably sized mold to fit a particular used tire is a matter of some difficulty because of the varying dimensions to be found among used tires. The difference in sizes of the worn tire due to the variation in the amount of wear of the tread was obviated to some extent in the prior art by denuding the worn tire of the rubber still covering the cord or the fiber of the tire by abrasion preparatory to the application of the new rubber composition. Thus the variation in sizes of tires due to the deformation of the fiber or cord or to variance in original construction only had to be taken into consideration. The patent states the object of Hawkinson's invention as follows:

"An important object of the invention is to provide a simple and highly efficient method of applying new tread to the road engaging crown portions of tire casings to replace that which has been worn off or removed, without removing or materially changing the appearance of the original shoulder tread portions or side wall of the tire, thereby saving the original ornamental design of the tires, leaving them readily identifiable as to make, reducing to a minimum the labor required to prepare tires for and to perform a retreading operation and further materially reducing the amount of new material required.

"Another important object of this invention is to provide a method whereby tire casings of varying size can be entered into and have new treads formed thereon in a single size annular matrix."

In the method described in the claims under consideration the rubber composition is placed on the road-engaging part of the tire upon the worn surface of the tread which lies between the shoulders which are formed by the intersection of the side walls of the tire and the road-engaging surface of the tire.

The next step in the method is to insert the casing with its new tread or "cammel back" in the metal matrix, which has an inside circumference less than normal outside circumference of the casing. This is accomplished by spreading apart the two bead portions of the casing thus contracting the circumference of the tire until it

can be inserted into the smaller sized matrix.

Next, the beads are released so that the tire expands into the mold and against the matrix therein, thus subjecting the tire with its superimposed composition to some initial pressure due to the expansive force of the rubber in the casing which had been contracted by forcing the beads of the tire apart. This initial pressure is then increased by expanding an air bag or tube housed within the tire preparatory to vulcanizing the new tread. Heat is applied to the matrix by steam introduced into pipes attached to and forming a part of the mold. The patent contains the following statement as to the effect of this process of vulcanizing the tire while the casing is in a state of compression: "Attention is here called to the fact that treads applied to casings, which are in a circumferentially contracted cross-sectionally flattened condition, will stretch and be maintained under tension when the casing is returned to a normal condition and that this tendency of the tread to return to a cross-sectionally flattened, circumferentially contracted condition renders the casing more easily flexed as it rolls over a road and therefore reduces road resistance to a minimum."

The patentee claims that his method of retreading tires was revolutionary because it produced a new and useful product; namely, a tire which otherwise is in a state of rest, had its tread portion in a state of tension, and its inner portion or carcass in a corresponding state of compression. It is claimed that such a tire not only reduces the road resistance to the movement of the vehicle equipped with said tires, but also decreases the amount of wear on the tire due to the decreased size of the rubber wave which it is claimed exists at the point of contact of the forward moving tire with the surface of the road. An inspection of the patent, however, would indicate that the main purpose of the patentee in the use of an undersized mold was to permit the retreading of tires varying in size by using a mold of smaller size than any of the sizes retreaded. As stated in the patent, "tire casings of varying sizes can be entered into and have new treads formed thereon in a single size annular matrix."

If the principal object of the inventor was to produce a tire in which there should be initial tension on the road surface of the tire and of compression in the casing to which the road surface is attached, the patent should have given some idea of the amount of compression of the tire permissible or desirable in the casing in matrix before the use of air pressure to further press the tire against the matrix during vulcanization of the newly attached composition.

It is perfectly obvious that if different sized tires are placed in the same sized matrix the amount of compression before air pressure is used and the consequent tension of the road surface of the tire after vulcanizing would vary with the size of the tire with relation to the size of the matrix. The only teaching of the patent on that subject is that the road bearing surface of the tire should be substantially flat at the time of vulcanization. Neither of the claims involved herein otherwise allude to the method of securing the desirable result of tension.

██ It is evident from an examination of the patent and the claims under consideration that the resulting tension of the road surface of the tire is a by-product of the method devised to make the retreading less expensive and laborious. It does not follow, however, from the failure to mention the peculiar nature of the product in the claims or to devote the process of the patent primarily to the production of tension in the road surface of the tire that the patentee is not entitled to the benefit of his discovery. Gamble Skogmo v. Paul E. Hawkinson Co., 98 F.2d 37, supra.

██ If this patented method is a revolutionary invention resulting in great utility and success as the appellee claims, the patentee is entitled to the benefit of his invention even though he failed to fully recognize its significance at the time the patent was procured. As stated, the Circuit Court of Appeals for the Eighth Circuit held, in Gamble Skogmo, Inc., v. Paul E. Hawkinson Co., supra, that claim 6 of the patent, in the light of the prior art, must be narrowly construed and, so construed, held that it was not infringed. The point principally emphasized by the plaintiff in that case was the method by which the side walls of the casing were protected from heat during the vulcanization of the new tread, heat being applied only to the tread or road surface. It was claimed in argument in the case at bar that the owner of the patent in the case before the Eighth Circuit Court of Appeals failed to sufficiently emphasize his discovery with refer-

170

ence to the benefits due to the tension of the road-bearing surface of the tire resulting from the process which is now pressed upon us as of such great significance.

### Was the patented process anticipated in the prior art?

As early as 1931 patents for method and apparatus for retreading tires was issued to R. S. Burdette, No. 1,579,641 and No. 1,-746,763. These patents provide for an annular mold cut transversely into three sections connected by hinged bolts to draw the mold together tightly over the enclosed tire and thus close the mold preparatory to vulcanization. Burdette patent No. 1,-579,641, supra, states: "The mold sections are constructed of such circumferential dimensions that, when they are assembled, they may be drawn together to form a full circle mold, the circumference of which is shorter than that of the tread of the casing. With such a mold construction the tread area of the casing and the tread elements are compressed as the mold sections are drawn together, and the side walls of the casing are flexed outwardly."

This method of compressing the tire circumferentially was one of the principal means used by the patentee Burdette to avoid the difficulties theretofore experienced in the art in forcing the tire against the enclosing matrix by internal pressure alone. He points out that by an attempt to force the tire into a larger matrix by internal pressure the carcass was stretched and air pockets developed which decreased if it did not wholly destroy the value of the tire. He states in his method patent (No. .1,746,763, supra):

"It is the primary object of my invention to provide an apparatus for use in retreading tires whereby the previously mentioned disadvantages are obviated, or in other words, a uniform compression between the carcass, and all of the various elements of the tread may be positively effected. * * *

"The mold sections are constructed of such circumferential dimensions that, when they are assembled, they may be drawn together to form a full circle mold, the circumference of which is shorter than that of the tread of the casing. With such a mold construction the tread area of the casing and the tread elements are compressed as the mold sections are drawn together, and the side walls of the casing are flexed outwardly."

The patent also refers to "disposing the carcass in rigid segmental molds having smaller internal peripheries than the external periphery of the carcass, drawing the segments of the mold together to restrict the circumference of the carcass."

It will be thus seen that one of the essential characteristics of the Burdette method patent is the use of a mold smaller than the exterior circumference of the carcass of the tire. This necessarily results in the exact situation which the petitioner claims to have discovered and the process he claims to have invented, that is, the tire is circumferentially compressed during vulcanization by placing the tire in a mold of smaller circumference.

The appellees, in urging that the appellants infringe the patent in suit, vigorously assert the identity of the two processes. The statement we quote from appellees' brief might well be urged by Burdette if the latter were claiming infringement by Hawkinson, namely: "It is utterly immaterial how the casing comes to be placed within the matrix, so long as there is the deformation to bring the casing in substantially to its working size for curing." But the patentee contends that the whole purpose of Burdette was to utilize a matrix which would fit the tire and that would avoid such compression. In this contention he relies upon the following statement in the Burdette patent: "It will be noted that stretching of the casing and its associated elements, as well as the air bag, is obviated, and that the compression of the elements to be united is secured entirely through a flexing action that does not distend the casing beyond its normal cross-sectional and circumferential dimensions."

This is merely a way of stating that if a thing is compressed it will not at the same time be extended. It is true that the patentee desired to avoid the effects which had theretofore resulted from forcing a small tire into a larger matrix by internal pressure in the tire, but the method he adopted to meet the difficulty was to compress the surface of the tire so that there was pressure contact between the tread surface and the matrix before any internal pressure was applied to increase that pressure against the matrix.

Because of the emphasis the patentee has placed upon the feature of compression, we have called attention to the

fact that this feature was anticipated by the method patent of Burdette. The fact that Burdette did not appreciate the advantageous results of his method does not affect the question of prior invention. As we said in Celite Corporation v. The Dicalite Co., 9 Cir., 96 F.2d 242, 248: "* * * it is sufficient to state that, as the patented process in suit was disclosed by the North patent, it was anticipated by that process even though it be assumed that the North patent failed to state, and that North did not know, of the increased flow rate of the product produced. Walker on Patents, 6th Ed., p. 291, § 218; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Kennicott Co. v. Holt Ice, etc., Co., 7 Cir., 230 F. 157, 160; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 S.Ct. 472, 37 L.Ed. 307."

■ If it be said that the amount of initial compression to which the tire is subjected in the Hawkinson patent in preparing to vulcanize the tire is defined by claim 8 here involved by the statement therein that the road surface of the tire should be in a substantially flat condition when vulcanized and that this clarification and definition constitutes invention over Burdette, who does not definitely indicate the degree of compression desirable, it is sufficient to say in reply that the definition is obviously one of degree and that a mere difference of degree is not patentable. This question was also considered in Celite Corporation v. Dicalite Co., supra, where we said: "In regard to the product claim in suit (claim 18) we think it clear that there is no invention over the product produced by North and Lozé, although it may be assumed that appellant's product is superior. Such a difference, if it may be attributed to the patented process, is only one of degree and is not patentable. Lovell Mfg. Co. v. Cary, 147 U.S. 623, 13 S.Ct. 472, 37 L.Ed. 307; Greene Process Metal Co. v. Washington Iron Works, 9 Cir., 84 F.2d 892; Elliott Core Drilling Co. v. Smith, 9 Cir., 50 F.2d 813, 816; California Fruit Growers' Exch., et al., v. Blake, Moffitt & Towne, 9 Cir., 19 F.2d 467."

The patent claims alleged to be infringed.

The two claims of the patent under consideration herein are as follows:

"6. The method of treading tire casings, which comprises applying a tread material to the crown of the casing intermediate the shoulders thereof, in placing the casing within and permitting expansion of the same against an annular matrix that engages only the newly applied crown tread and adjacent shoulders of the casing, whereby to confine the newly applied tread material between the shoulders when under pressure and in a flowing condition, in applying internal expanding pressure to the casing to expand the same against the matrix, and applying heat to the matrix."

"8. The method of treading tire casings, which comprises applying tread material to the crown of the casing, in deforming the casing throughout its circumference so that the crown portion of the carcass and the applied crown tread material are in a cross-sectionally substantially flat condition, and in curing the newly applied tread material to the crown of the casing while the casing is in the circumferentially deformed condition."

■ Claim 6 does not indicate any compression of the tire except by the phrase "permitting expansion thereof against an annular matrix". The patent owner claims that this indefinite statement must be interpreted in the light of the patent drawings and specifications. This is in accord with our decision in Shull Perforating Co. Inc., v. Paul Cavins, 9 Cir., 94 F.2d 357, 364, where we said: "The patentee is entitled to have the claims of the patent construed with reference to the drawings and specifications. Where the means referred to in claims are clearly shown in the description of the patent, this description is sufficient to cover the means thus disclosed and its mechanical equivalents. Walker on Patents, 6th Ed., vol. 1, p. 195, § 162a. * * * Wessel v. United Mattress Mach. Co., 6 Cir., 139 F. 11, 15."

The trial judge concluded that the only new step involved in claim 6 was the placing of the tread material on the crown of the casing "intermediate the shoulders thereof", and that this did not involve invention. It is only another way of saying that the new material is placed on the worn surface of the tire. We agree with the trial judge that this alone would not constitute invention.

### Compression of carcass during vulcanization.

If compression of the carcass of the tire during vulcanization by use of a mold smaller than the tire has a definite and beneficial effect as the owner of the patent contends, that effect had already been produced by Burdette, as stated above, and

also by others even if not recognized by them as valuable.

In a patent issued to T. J. Mell, No. 906,-256, in December 1908, the patent shows a method of compressing the outer surface of the tire being retreaded by the application of pressure on the tread portion of the tire in the direction of the axis. The patent states: "This invention has for its object, among others, the production of molds of greater general efficiency than those heretofore employed for similar purposes; molds capable of imparting to articles formed therein a longitudinal as well as transverse pressure; * * *."

Mell evidently claimed that the tire thus produced was of superior quality for he says: "Thus, in addition to the usual transverse pressure, the tire is compressed radially, upon its tread-surface or point of greatest strain, to materially increase its durability and decrease its liability to punctures, * * *."

Claim 5 of the Mell patent refers to the use of means "whereby the diameter of said matrix is automatically reduced during process of molding."

In a patent issued to J. W. Hughes in February 1925, No. 1,524,866, a mold is shown wherein the segments embracing the tire are forced together by screws before vulcanizing the new tread, thus exerting pressure tending to deform the tire circumferentially. The main purpose of the patentee in using pressure to force the mold together was so as to use the same mold for "a normal sized tire and its oversize and to retread the same." He states that various manufacturers of tires do not make the nominal size of the tire precisely the same, the diameter of the tire varying as much as $3/8$ of an inch from the nominal size. He explains that if the variance is as much as half an inch or an inch a spacing ring would be required to use his process. The process of forcing the segments of the mold together described in this patent necessarily involves the use of a circumferentially deforming pressure, that is, a pressure which decreases the overall circumference of the tire.

In a patent issued to Howell and Sapp, September 6, 1927, No. 1,641,490, for a retreading mold, the patent shows an arcuate mold in two segments, hinged at one junction of the segments, and brought together by a right and left screw moving in blocks or lugs attached to segments at the other junction. It is stated that in this device the segments are open sufficiently to allow the entry of the tire "with but little if any distortion of the tire. The sections are then closed up by turning the screw 10 in the opposite direction." While the purpose of this arrangement is evidently to get a snug fit, it is manifest that ordinarily there would be some initial pressure on the circumference of the tire due to the forcing together of the segments of the mold by screws in the manner indicated. This patent, however, is cited as an anticipation largely because of an alternate method shown in Fig. 5 of the patent drawings wherein the mold is made in one piece and the tire is deformed in order to place it therein. While the method shown in Fig. 5 would seem to be a clear anticipation of the claims 6 and 8 of the patent now under consideration, it is stated in the patent that "Fig. 5 is a side elevation of a mold of continuous and unbroken construction for use with small and easily flexed or collapsed tires."

It is stated by the witnesses that this method could not be used for the heavy balloon tires retreaded by the patent method of Hawkinson. While cited as a complete anticipation, we think in view of the fact that the patent method of Hawkinson deals with a mold which merely engages the road surface and which, because of its cylindrical character, permits the placing of the tire therein with a relatively small amount of distortion by spreading the beads apart, we may assume there is not a complete anticipation by the method disclosed by Fig. 5 of this one patent which is only capable of use in retreading small tires.

Another feature of claim 6 which is relied upon by the patentee is the use of "an annular matrix that engages only the newly applied crown tread and adjacent shoulders of the casing * * *." This is an important factor in the retreading process because it permits the vulcanizing of the rubber composition on the tread surface without heating the sides of the tire during the process, such heating being detrimental to the rubber on the sides of the tire thus overheated. But this feature was already disclosed in the prior art in a patent to Ruark, No. 1,608,816, issued November 30, 1926 for tire retreading. The Ruark patent shows an arcuate mold in two sections hinged at one end and clamped at the other, so constructed as to cover the tread portion of the tire. The tire engaging surface of the mold is not flat but arcuate.

In this patent, while the vulcanizing heat would extend down the sides of the tire below the shoulder of the tire, this was necessary in order to cover the rubber composition newly applied to the tire tread and sides of the tire. The Ruark patent shows a method of vulcanization by which the side walls of the tire which are not covered by the unvulcanized rubber composition are not heated during the vulcanizing of the new tread thus anticipating the method of the patent in suit in that respect.

Patent No. 1,379,203 to Mundale, issued May 24, 1921, shows a retreading mold in which the sides of the tire are not engaged by the mold which is heated for revulcanization and, consequently, are free from the heat used in revulcanization.

The Jones patent, No. 1,467,761, issued September 11, 1923, instead of leaving the sides of the tire open to the air to protect it from heat during revulcanizing packed that portion of the mold in contact with the sides with asbestos or similar material to prevent the heat from reaching the side walls of the tire which was one of the current difficulties in the practice of retreading.

■ It therefore appears that the various steps involved in the method of claim 6 were either old in the art or did not involve invention and that the combination of these old steps used to retread a tire did not result in a new product. Hence, there was no invention in the method described in claim 6.

The lower court sustained the validity of claim 8 which involves three steps, first, applying the tread material to the crown of the casing; second, deforming the casing throughout its circumference so that the crown portion of the carcass and the applied crown tread material are in a cross-sectional substantially flat condition; third, in curing the newly applied tread material to the crown of the casing while the casing is in a circumferentially deformed condition. The claim was sustained by reading into claim 8 the use of " * * * a retreading matrix which has an inside diameter definitely less than that of the outside circumference line of the tire * * *." It is true that the claims should be construed in the light of the specifications of the patent but, assuming that this involves the use of a matrix of smaller diameter than the carcass of the tire, assuming also, contrary to the contention of the alleged infringer, that this

feature was not a mere function of a machine, it is nevertheless true that the use of a mold smaller than the tire is shown in a number of patents above cited. The degree of compression we hold is not a patentable invention.

We agree with the decision of the Circuit Court of Appeals for the Eighth Circuit in Gamble Skogmo v. Paul E. Hawkinson Co., 98 F.2d 37, supra, that the feature of the patent method which leaves the side walls of the tire free of the heat applied for vulcanizing was anticipated by Mundale and Ruark patents and also by that to Jones, supra. Nothing new remains in the claim. We conclude that claim 8 is invalid for want of invention.

The appellee contends that notwithstanding the fact that the various steps in the patent process are found in the prior art, the patentee nevertheless has combined these old elements in a new combination producing a new result and therefore he is entitled to the benefit of his invention notwithstanding the use by him of elements which are old in the art. This position is perfectly tenable provided the combination is new and that a new and useful result has been obtained. This argument is met by the proposition that no new result is attained by the patentee. The same result which he obtained as a by-product of his invention had also been attained by prior inventors.

### Commercial success.

■ The appellee strongly relies upon commercial success attained by the use of patent method as evidence that his process was revolutionary and produced a new result. There is an element of unfairness in this contention which apparently escaped the attention of the courts in connection with such claims.

The patent in question contains eight claims, that is, eight separate but related inventions, all of which, except claims 6 and 8, so far as this litigation is concerned are assumed to be valid.

The situation presented by this record well illustrates the desirability of confining an inventor to his actual invention without permitting him to blanket the industry by broad claims and thus secure a monopoly by the use of broad claims of doubtful import and value. If these other claims are valid, as must be assumed, there is no reason why the commercial success of the plaintiff's invention should not be referred to the

claims not in suit rather than to these general claims.

The broad claims of course have been an asset to the patentee in his effort to monopolize the business of retreading tires. As we have pointed out, the patentee has attempted, by enforcing the broad claims 6 and 8 of his patent, to prevent the use of apparatus and methods in existence long before he secured a patent.

We conclude that claim 6 shows no patentable novelty or combination over prior art patents.

The decree is reversed as to claim 8 and affirmed as to claim 6.